**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Brandon C., <br><br>                    *Plaintiff,* <br><br>         *v.* <br><br> Frank J. Bisignano, <br> Commissioner of Social Security, <br><br>                  *Defendant.* | Case No. 3:24-cv-50005 <br><br> Honorable Michael F. Iasparro |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandon C. brings this action under 42 U.S.C. § 405(g) seeking an award of disability benefits or, in the alternative, a remand of the decision denying his applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On November 7, 2017, Plaintiff filed an application for disability insurance benefits ("DIB") alleging a disability onset date of March 1, 2014. R. 234-35. Plaintiff last met the insured status requirements of the Social Security Act in December 2016. R. 245. Plaintiff also filed an application for supplemental security income ("SSI") on August 22, 2019. R. 252-58. Following a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on October 30, 2019, finding that Plaintiff was not disabled. R. 147-60. After the Appeals Council denied Plaintiff's request for review, Plaintiff appealed to this court. R. 1-7. The court found that the ALJ's decision was flawed and remanded the case for further review. R. 935-48. While that appeal was pending, Plaintiff filed another application for social security income benefits which resulted in a favorable decision, finding Plaintiff disabled as of February 2, 2021. R. 924-32.

Accordingly, two distinct time periods were analyzed on remand – March 1, 2014 through December 31, 2016 ("the DIB period") and August 22, 2019 through February 1, 2021 ("the SSI period").[2] After two additional hearings, the ALJ again determined that Plaintiff was not disabled,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 38.

[2] To be eligible for DIB, "the claimant must establish that he was disabled before the expiration of his insured status" so the first period runs from Plaintiff's alleged onset date to his date last insured. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). The second period at issue runs from the day Plaintiff applied for SSI benefits, because claimants are not eligible for SSI benefits before their application date, to the day before Plaintiff was found disabled, because administrative res judicata applies to the period in which Plaintiff has already been found to be disabled. 20 C.F.R. §§ 416.335, 416.1457.

1

issuing an unfavorable decision on October 31, 2023. R. 803-24. The ALJ concluded that Plaintiff had no medically determinable impairments during the DIB period. R. 806. During the SSI period, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> no climbing ladders, ropes or scaffolds; occasional crawling; frequent handling, fingering and feeling with the right upper extremity; no working with vibrating tools or work surfaces; understand, remember and carry out simple instructions and make simple work-related decisions; no fast-paced production rate or strict production quotas but able to meet end-of-day goals; occasional interaction with coworkers but no team or tandem work (very restricted with whom he interacts on a limited basis 2-4 individuals who become familiar and interact routinely); no requirement to work with the general public; routine and repetitive work environment; occasional changes in the work or the location; and able to sustain attention and concentration to carry out simple work in 2-hour increments, assuming typical breaks.

R. 812. The ALJ found that Plaintiff was unable to perform past relevant work but there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 822-23.

The Appeals Council did not assume jurisdiction, making this the final decision of the Commissioner. 20 C.F.R. §§ 404.984(d), 416.1484(d). Plaintiff then filed this action seeking judicial review. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

**DISCUSSION**

Plaintiff finds fault in the Commissioner's decision, claiming the ALJ (1) failed to consider Plaintiff's testimony; and (2) erred by finding Dr. Andert's opinion more persuasive than that of Dr. Soriano.[3] As discussed in further detail below, the Court does not find that either of these alleged errors warrant remand.

1) Plaintiff's testimony

Plaintiff first argues that "[t]he ALJ failed to properly account for [Plaintiff's] testimony regarding his conditions."[4] Dkt. 11, at 8. Specifically, Plaintiff argues that the ALJ did not adequately consider the modifications Plaintiff made to his activities of daily living or Plaintiff's explanation for why he did not seek treatment when determining that Plaintiff's impairments were not severe (presumably referencing the DIB period). *Id.* at 9-10. But the ALJ didn't reach the step of determining the severity of Plaintiff's impairments because the ALJ found that Plaintiff had *no* medically determinable impairments during the DIB period.

Step two of the sequential analysis involves a two-part process in which the ALJ first evaluates whether the claimant has "an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *SSR 16-3p: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *3 (Oct. 25, 2017). In this first part of the step two analysis, a claimant "must have objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment," objective medical evidence that must come in the form of "medical signs or laboratory findings." *Id.* Crucially, "[i]f an individual alleges symptoms, but the medical signs and laboratory findings do not substantiate any medically determinable impairment capable of producing the individual's alleged symptoms, [the ALJ] will not evaluate the individual's symptoms" in the second part of the step two analysis. *Id.* at *4. Only in that second part are a claimant's own statements about his symptoms considered.

Here, the ALJ found Plaintiff had no medically determinable impairments during the DIB period, meaning that she found Plaintiff not disabled in the first part of this step two evaluation. This was not in error. Plaintiff readily admits that he "has no way to prove [an impairment] with medical evidence as it does not exist."[5] Dkt. 11, at 12. But medical evidence is needed to make it

---

[3] Plaintiff also alleges that "[t]he ALJ erred by limiting the scope of Claimant's period of disability to an adjudication period from March 1, 2014 to February 1, 2021" but provides no further argument beyond this conclusory statement (nor can the Court decipher what possible argument could have been made to support this statement). Dkt. 11, at 1. This argument is waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments… are waived." (quoting *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))).

[4] Notably, when outlining the issues for review, Plaintiff first says this error is found in the ALJ's RFC analysis. Dkt. 11, at 1. However, Plaintiff's argument focuses entirely on the DIB period, for which time the ALJ did not perform an RFC analysis. The Court will give Plaintiff the benefit of the doubt and assume that, despite the initial issue statement saying otherwise, Plaintiff actually finds error in the ALJ failing to properly account for his testimony at step two of her analysis of the DIB period.

[5] Plaintiff asserts that his self-isolation lead to this dearth of evidence during the DIB period because "[t]he era of tele-medicine produced by the Covid-19 pandemic did not exist." Dkt. 11, at 12. While the

past this "*de minimis* screening" at step two. *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). Thus, Plaintiff's arguments about the ALJ's consideration of Plaintiff's testimony, and other non-medical evidence such as third-party reports and unanswered letters from the Internal Revenue Service, are irrelevant to the first part of the analysis which is where the ALJ determined that Plaintiff was not disabled.

As discussed more fully below, Plaintiff also challenges the ALJ's consideration of the medical opinions of record and suggests that the ALJ should have relied on Dr. Soriano's opinion to find Plaintiff disabled during the DIB period. Dkt. 11, at 11-12. But again, the ALJ did not make it past part one of step two which requires "medical signs or laboratory findings." *SSR 16-3p*, 2017 WL 5180304, at *3. A medical opinion is a separate category of evidence from objective medical evidence, *see* 20 C.F.R. § 416.913, and thus cannot "establish the existence of an impairment." 20 C.F.R. § 416.921; *see also Laggner v. Comm'r of Soc. Sec.*, No. 1:20-cv-166 JD, 2021 WL 5077590, at *3 (N.D. Ind. Nov. 2, 2021) ("mere diagnosis from an acceptable medical source, without objective medical evidence, is not sufficient to establish a medically determinable impairment at Step 2"). Even so, the ALJ went beyond what was required of her and supported her determination that Plaintiff had no medically determinable impairments during the DIB period by pointing to the fact that all the state agency consultants and Dr. Andert reached the same conclusion. R. 807-808. Opinions from four state agency consultants and a medical expert certainly constitute substantial evidence.

The bottom line is that Plaintiff bore the burden of showing he was disabled during the DIB period and to do so, he was required to first provide objective medical evidence showing the existence of a medically determinable impairment. Plaintiff produced no objective medical evidence from the DIB period, so the ALJ determined that Plaintiff had no medically determinable impairments during that time. That was a reasonable conclusion that this Court will not disturb.

2) Medical Opinion Evaluation

The ALJ found the opinion of Dr. Soriano, Plaintiff's retained expert, to be unpersuasive. R. 808. Plaintiff disagrees with this conclusion and argues that the ALJ improperly relied on the fact that Dr. Soriano is a paid expert. Dkt. 11, at 13-14. Plaintiff also attacks the ALJ's reliance on the opinion of Dr. Andert, the medical expert retained by the Commissioner, "because it did not adequately account for the record as a whole." *Id.*

When examining medical opinions, ALJs are required to articulate the persuasiveness of each opinion by considering the following factors: supportability, consistency, the source's relationship with Plaintiff, the source's specialization, and other factors as appropriate. 20 C.F.R. § 416.920c(c). While ALJs are not required to explicitly address all these factors, they must explain

---

Court is sympathetic to Plaintiff's struggles with mental health and agrees that the pandemic certainly "turbo-charged" the expansion of telehealth, this statement that telehealth did not exist is simply erroneous. *Whole Woman's Health All. v. Rokita*, 13 F.4th 595, 603 (7th Cir. 2021) (Wood, dissenting); *see also* Christina Susanto, *Net Neutrality and a Fast Lane for Health*, 37 J. Legal Med. 105, 107 (2017) (discussing the increasing availability of telehealth). Moreover, even liberally reading this statement to mean that Plaintiff personally did not have access to telehealth treatment, Plaintiff has not pointed the Court to anything in the record supporting this statement, such as a documented (or even alleged) attempt by Plaintiff to receive such treatment.

their consideration of the two most important factors – supportability and consistency. 20 C.F.R. § 416.920c(b); *see also Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025). The ALJ's analysis is evaluated under "a very deferential standard" and must be allowed "to stand so long as the [ALJ] minimally articulated his reasons." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

Here, the ALJ evaluated the persuasiveness of Dr. Soriano's opinion twice, once in reference to the DIB period and again in reference to the SSI period, providing in relevant part that:

> his assessment of marked limitations in interacting with others and in adapting or managing oneself is inconsistent with the claimant's mental health treatment record showing no psychiatric hospitalizations or even partial hospitalizations or even more intensive outpatient treatments during the period since the [alleged onset date]. His opinion is also inconsistent with the mental health treatment records showing the claimant's mental health symptoms generally improving with medication adjustments and the claimant becoming more functional and outgoing. . . . Dr. Soriano extrapolates in his one-time, 90-minute examination report that the findings of that exam would relate back all the way to the [date last insured] and even to the [alleged onset date], without any basis for this conclusion. . . . But he does not explain the lack of any records at all during [the DIB period]. He also was unable to provide a specific function-by-function assessment of the claimant's mental work-related abilities. The undersigned notes that Dr. Soriano was hired by the claimant's representative to examine the claimant and to testify. He has no background as [a medical expert] and only reviewed selective information provided by the claimant's representative. He does not appear to be familiar at all with the Social Security regulations, rulings and policies governing disability evaluation, aside from the limited sources he testified that he reviewed.

R. 820. This is exactly the sort of evaluation an ALJ is required to provide. Nonetheless, Plaintiff takes issue with the ALJ's reliance on the fact that Plaintiff hired Dr. Soriano, Dr. Soriano's lack of familiarity with Social Security regulations, and the brevity of Dr. Soriano's interaction with Plaintiff. Dkt. 11, at 11. While none of these reasons would be sufficient on their own to justify the ALJ's conclusion that Dr. Soriano's opinion was unpersuasive, the ALJ is certainly permitted to consider these factors. *See Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016) (affirming where the ALJ considered (but did not solely rely on) the fact that a doctor was hired by the claimant to find that doctor's opinion warranted less than controlling weight); 20 C.F.R. § 416.920c(c)(3)(i), (5) (the Commissioner will consider the medical expert's length of the treatment relationship as well as their understanding of the relevant policies).

The ALJ's consideration of these factors, as well as the supportability and consistency factors (which Plaintiff makes no attempt to challenge), shows that "substantial evidence supported the ALJ's decision to" find Dr. Soriano's opinion not persuasive. *Warnell*, 97 F.4th at 1053. Yet, Plaintiff persists in arguing that the ALJ's evaluation of Dr. Soriano's opinion was flawed, asserting that the ALJ should have asked further questions if she was unsure about how Dr. Soriano reached his conclusions for the DIB period with no records from that time. Dkt. 11, at 11. But this

argument misunderstands the ALJ's role in these proceedings and ignores the fact that the ALJ did ask Dr. Soriano about that gap in treatment records.

"It was [Plaintiff's] burden, not the ALJ's, to prove that []he was disabled." *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). Even so, the ALJ specifically asked Dr. Soriano to explain what evidence supported his conclusion that Plaintiff was "totally disabled" during the DIB period. R. 846. Dr. Soriano pointed to several examples of Plaintiff failing to keep up with his personal and professional responsibilities as well as Plaintiff's later descriptions of his subjective symptoms. R. 846-47. This is the sort of "readily discernable" information the ALJ needed to evaluate the supportability of a medical opinion. *Cain*, 148 F.4th at 499 (quoting *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). If Plaintiff believed that some other evidence supported Dr. Soriano's opinion for that period, it was his responsibility to elicit that testimony from Dr. Soriano or produce such evidence. *See Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) ("Under agency regulations, the claimant has the principal duty to submit evidence relating to the disability claim."); *Poyck v. Astrue*, 414 Fed. App'x 859, 861 (7th Cir. 2011) (unpublished) ("Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence that further development of the record is required.").

Plaintiff also argues that the ALJ improperly found the opinions from Plaintiff's treating physicians to be unpersuasive "primarily because they disagreed with the State Agency opinions." Dkt. 11, at 13. However, a close examination of the ALJ's opinion shows that she properly evaluated the persuasiveness of Plaintiff's treating physicians' opinions without unduly relying on their inconsistency with the state agency consultants' opinions. In fact, when evaluating the opinions provided by Dr. Jafry, Ms. McNeal, and Dr. Carl, the ALJ makes no mention of the state agency consultants' opinions. Rather, the ALJ relies on factors such as inconsistencies between the treaters' opinions and their own treatment notes (citing those treatment notes), Plaintiff's own contradictory testimony (citing Plaintiff's function reports), and the length and time period of the providers' treating relationship with Plaintiff. R. 820-21.

Plaintiff then argues that the ALJ was wrong to determine that Plaintiff's demeanor during the hearings did not support the claimed deficiencies in concentration because the testimony was necessarily that of a disabled man and does not represent "the full picture." Dkt. 11, at 13. But the ALJ did not equate her observations of Plaintiff with a not disabled finding. Rather, as Plaintiff himself recognizes, the ALJ simply observed that Plaintiff "was able to clearly and coherently answer questions posed to him," suggesting that he does not experience significant limitations in concentration. R. 821. That was a perfectly reasonable interpretation for the ALJ to make. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). Moreover, even in the later period when Plaintiff was found to have impairments equal to listings 12.04 and 12.06, the medical expert found that Plaintiff had no limitation in concentration. R. 1481. Thus, the ALJ's observation of Plaintiff's ability to concentrate did not, as Plaintiff suggests, conflict with the later determination that Plaintiff is disabled.

Finally, Plaintiff faults the ALJ for relying on Dr. Andert's opinion because Dr. Andert did not review Plaintiff's testimony, rendering his opinion incomplete. Dkt. 11, at 10. It is true that an ALJ should not rely on incomplete medical expert opinions. *See Sullivan v. Colvin*, No. 1:13-cv-01758-JMS-DKL, 2014 WL 4059796, at *3 (S.D. Ind. Aug. 14, 2014) (collecting cases). However, a medical opinion rendered without reviewing a claimant's testimony is not incomplete because

6

ALJs need only rely on medical experts to interpret *medical* findings. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (explaining that an ALJ played doctor when he "reached his own independent *medical* conclusion (emphasis added)). Conversely, ALJs are qualified to consider a claimant's testimony on their own without the expertise of a medical professional. *See Terri P. v. Kijakazi*, No. 1:22-cv-01899-MG-JPH, 2023 WL 12181973, at *6 (S.D. Ind. Sept. 28, 2023) (affirming despite the fact that the medical expert did not hear plaintiff's testimony because "[t]he ALJ was present for this testimony" and considered the entire record); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (confirming that ALJs are qualified to review lay evidence); *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023) (affirming where evidence produced after the medical experts rendered their opinions was "information [] conveyed in layman's terms . . . rather than the 'medical mumbo jumbo' we've warned judges not to interpret" (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014))). Thus, the ALJ was not unreasonable in using her own layman's view to interpret Plaintiff's testimony nor in finding Dr. Andert's opinion persuasive even though Dr. Andert did not review Plaintiff's testimony.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: May 5, 2026     By: _____
                             Michael F. Iasparro     .
                             United States Magistrate Judge

7